UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEDRICE DORSEY, <br><br> Plaintiff, <br><br> v. <br><br> BRAD WILLIAMS, et al., <br><br> Defendants. | CAUSE NO. 3:19-CV-71-PPS-MGG |

OPINION AND ORDER

Kedrice Dorsey, a prisoner without a lawyer, was fired from his prison job and filed suit under 42 U.S.C. § 1983, claiming he was subject to discriminatory and harassing treatment at work, an improper search, and then was fired in retaliation for filing grievances about his treatment. After screening his complaint, I granted him leave to proceed on: 1) an Equal Protection claim for racial harassment and discrimination during the course of his employment; 2) an Eighth Amendment claim for an inappropriate search; 3) a First Amendment retaliation claim for terminating his employment and filing false reports in retaliation for submitting grievances and reporting the inappropriate search; and 4) an injunctive relief claim to remedy the unconstitutional practices. ECF 8, 24.

Oddly, I have before me cross motions for summary judgment (defendants' motion is for partial summary judgment), and neither party responded to the other parties' motion. ECF 51, 60, and 61. Defendants seek partial summary judgment on the Equal Protection and injunctive relief claims. As a pro se litigant, Dorsey was given the

warning required by N.D. Ind. L.R. 56-1(f) that "If you do not respond to the summary judgment motion, you may lose this case." ECF 60, 62. Dorsey also requested a hearing on his motion for a summary judgment, which I will deny as unnecessary. ECF 64. The summary judgment motions are now ready to be decided.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). With cross-motions for summary judgment, I "take the motions one at a time, construing all facts and drawing all reasonable inferences in favor of the non-moving party." *Black Earth Meat Market, LLC v. Vill. of Black Earth*, 834 F.3d 841, 847 (7th Cir. 2016).

Defendants moving for summary judgment can succeed by showing plaintiffs cannot prove at least one element of a claim. Plaintiffs moving for summary judgment, however, must affirmatively demonstrate they can prove every single element of a claim with undisputed evidence. This is a higher burden than at trial, where they need

only convince the jury that their version of events is more likely true than not true. "Where, as here, the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). If the movant does not make this initial showing, I am obligated to deny the motion. *Id.* Because Dorsey is proceeding without a lawyer, I must construe his filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Both Dorsey's summary judgment brief and his complaint were declared to be true under penalty of perjury and signed, and therefore I'll consider statements in them to the extent they are based on his personal knowledge. *See Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996).

Dorsey had a job at Miami Correctional Facility with PEN Industries as a clerk. ECF 61-1 at 11:1-13. He claims that Brad Williams, the PEN Plant Foreman Supervisor, and Michael Arthur, a Sergeant at the prison, treated him, an African American, differently than his co-workers, who were white. ECF 31 at ¶¶ 2, 7; ECF 51-1 at 2. He says that they watched him more closely, and he singles out four specific incidents of mistreatment.

<u>First</u>, on August 5, 2017, Williams falsely accused Dorsey of adding pay adjustments to another inmate's pay without approval. ECF 51-3 at 11. However, Sandi Roark, the plant manager, had approved the corrections, so Williams' accusation was baseless. *Id.*

3

Second, Dorsey claims that Williams and Arthur tried to get him fired on August 12, 2017. They told Roark that "Dorsey is arrogant, combative, and challenging to their authority and they don't think that Dorsey is a good fit for PEN." ECF 51-3 at 11. Roark told Dorsey about these accusations but said she did not see that kind of behavior from him. *Id.*

Third, on August 26, 2017, Dorsey was sitting in a supervisor's office while the speaker phone was on, and overheard Arthur on the other side saying that he and Williams knew Dorsey was stealing from work and that when they caught him, they planned to fire Dorsey. ECF 51- at 11. Dorsey reported this false accusation to Roark and told her he was uncomfortable around Williams and Arthur because they were trying to get him fired. *Id.* In his deposition, Dorsey elaborated that things were going missing from work, and he wondered why out of all the inmates that worked there, he was the only one mentioned by name as the possible thief. ECF 61-1 at 37.

And fourth, on September 29, 2017, Dorsey was alone in an office with a female correctional officer doing payroll. ECF 51-3 at 10. Williams questioned whether that officer would be safe alone with Dorsey. *Id.* After they started working, Dorsey closed the door to block out the noise of vacuuming. *Id.* Williams kept walking by, giving the other officer the "stink face" while pointing to the closed door. *Id.* Even though the female officer said she was fine, Dorsey opened the door. *Id.* He felt uncomfortable that Williams thought he would harm the other officer, and he felt like Williams essentially accused him of being a sexual predator because he was African American. *Id.*

Dorsey says that Williams and Arthur singled him out for this treatment and didn't treat the three other clerks, who were white, the same way. ECF 51-1 at 11. He complained about the first three incidents to the plant manager, Roark, but nothing changed. ECF 51-1 at 10. So Dorsey filed a grievance on October 10, 2017, about the four incidents. ECF 51-3 at 10-11. When Williams and Arthur learned about the grievances, Dorsey says they harassed him even more, but he does not give any specific examples until the day he was fired. ECF 51-1 at 10.

When Dorsey reported to work the morning of March 13, 2018, he submitted to the pat-down search all inmate workers receive when entering or exiting the building. ECF 51-1 at 15. His search was conducted by R. Crowe, who, Dorsey says, squeezed his buttocks during the search. *Id.* Dorsey immediately flinched and asked, "What was that?" *Id.* at 16. Crowe responded that it was a proper search, but Dorsey said it wasn't because Crowe squeezed his butt. *Id.* Dorsey said he was going to file a grievance about it. *Id.* at 18.

Williams got involved and told Dorsey to return to his housing unit for the day. ECF 51-1 at 18. Dorsey complained about being forced to take a day off when he did nothing wrong. *Id.* at 18-19. Williams responded, "[y]ou're fired and put that in your grievance." *Id.* at 19. Dorsey believes that Williams fired him in retaliation for the October 2017 grievance and the grievance he planned to file about the search. *Id.* at 11.

Williams called Roark to get her consent to fire Dorsey. ECF 51-1 at 11. Roark could have stopped it but instead, she allowed Williams to write a PEN Progressive Disciplinary Warning Notice that Dorsey says was false. *Id.* at 12. He was cited for his

5

attitude: "Dorsey was extremely disrespectful and loud when informed he was being sent back to the unit. This type of conduct and belligerence will not be tolerated . . .." ECF 51-3 at 13.

Williams then wrote up a conduct report that stated: "Dorsey was advised he was being returned to the unit after being disrespectful to Custody staff when he was being patted down upon entering the building. Ofd. Dorsey began to raise his voice in the PIC Office to a very loud and disrespectful level. Ofd. Dorsey was then escorted out of the building by the Custody Sergeant." ECF 51-3 at 18. Arthur also submitted a witness statement:

> On March 13, 2018 at approximately 0745 a.m. I, Sgt. Michael Arthur observed and heard offender Kedrice Dorsey #991309 yelling and cursing at Brad Williams (PEN Industries Foreman Supervisor). Offender Dorsey had been frisk searched according to protocol earlier before beginning work for the day. At that time, offender Dorsey had angrily and verbally objected to the search process. I explained to him that he had been searched properly and that he had no cause for objection. He disagreed and continued to verbalize that, taking the name of the officer who performed the search. I then informed offender Dorsey that he would be going back to his housing unit for the day due to his behavior. He again disagreed. I notified Mr. Williams of the issue and returned to complete[] the search process for the remainder of the PEN workers. When that was done, I went to offender Dorsey to inform him again that he would be sent back for the day. I then went to the accountability board to prepare to clock him out. When offender Dorsey did not appear, I went back to his work area and observed the aforementioned incident with Mr. Williams wherein offender Dorsey was behaving in a belligerent and disruptive manner. I left the work area with offender Dorsey, re-searched his person, clocked him out and sent him back to F-Housing Unit.

ECF 51-3 at 19. Dorsey disputes both of these accounts.

Dorsey brings an action against Williams and Arthur for racial discrimination and against Roark and the warden, William Hyatt, for allowing the discrimination to continue. He is suing Crowe for the improper search and Hyatt for not stopping the search. He is suing Williams for a First Amendment retaliation claim and Hyatt for not

6

stopping it. Finally, he sues Hyatt for injunctive relief to remedy the unconstitutional practices.

Looking first at Dorsey's request for summary judgment on his Equal Protection claim, he argues that Williams and Arthur often displayed pretextual and discriminatory conduct to get him fired because of his race. ECF 51-1 at 9. The basic requirement for an equal protection claim is that the plaintiff must provide "evidence that would allow a reasonable jury to infer that the defendants intentionally treated him differently because of his race." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019). "Direct as well as circumstantial evidence may support an inference of causation, and thus intent. To clarify and to simplify her task, a plaintiff may choose to enlist the burden-shifting framework of *McDonnell Douglas*." *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020) (quotation marks and citation omitted).

Under the framework set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), employment discrimination may be inferred if a plaintiff establishes "(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573 (7th Cir. 2021) (quotation marks and citation omitted). Although *McDonnell Douglas* was a Title VII case, the same framework may also be used in cases under § 1983. *See Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 860 n.6 (7th Cir. 2010). As the Seventh Circuit recently clarified:

7

> In order to make out a case of . . . discrimination without resorting to *McDonnell Douglas*, a plaintiff must provide either direct or circumstantial evidence that supports an inference of intentional discrimination. We have identified three broad types of circumstantial evidence that will support an inference of intentional discrimination: ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment.

*Joll*, 953 F.3d at 929 (quotation marks and citation omitted).

Dorsey has no direct evidence of discrimination and therefore must rely on circumstantial evidence. He does not explicitly lay out the *McDonnell Douglas* framework, and in looking at his evidence, it is clear that he cannot establish all four factors beyond dispute. Nor can he otherwise prove discrimination through circumstantial evidence.

The problem with Dorsey's evidence is that he does not give details about his co-workers other than they are white. There is no way for me to determine whether they are similarly situated to Dorsey. The similarly situated requirement is necessary if he relies on differential treatment:

> All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination. The similarly situated prong establishes whether all things are in fact equal. Its purpose is to eliminate other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable—discriminatory animus.
>
> Although similarly situated employees need not be identical in every conceivable way, they must be directly comparable to the plaintiff in all material respects. In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such

8

> differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. . . .

*McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368-69 (7th Cir. 2019) (quotation marks and citation omitted). Here, assuming Dorsey was treated differently than his coworkers, there is no basis for me to find at summary judgment that the reason was due to race and not something else.

Looking otherwise at the evidence, Dorsey's evidence is not so one-sided that I can grant him summary judgment. I have to view the evidence in a light most favorable to defendants, and it is possible that Dorsey *was* arrogant, combative, and challenged authority, not just perceived to be that way because of his race. Moreover, at summary judgment, I have to credit the written reasons for Dorsey's termination and cannot believe Dorsey's claim that they are dishonest justifications for his termination. Summary judgment for Dorsey is inappropriate on this claim.

Defendants also move for summary judgment on the Equal Protection claim. In evaluating their motion, I look at the evidence in a light most favorable to Dorsey. None of the instances Dorsey identifies are directly indicative of racial harassment or discrimination. He instead finds them racist in the context of his white coworkers not receiving the same treatment. However, summary judgment is the "put up or shut up" moment of litigation. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoting *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003)). For this claim to go past summary judgment, Dorsey needs to provide me with a basis to find that he and his white coworkers are similarly situated. Without such evidence, Dorsey has not

9

shown there is a genuine dispute of fact for trial. Therefore, Williams and Arthur are entitled to summary judgment on this claim. And so, too, are Roark and Hyatt, whose liability was based on failing to stop Williams and Arthur's unconstitutional behavior.

Next, I'll address Dorsey's request for summary judgment on his improper search claim. "In the context of bodily searches performed upon those incarcerated in our prison system, only those searches that are maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional. In other words, the search must amount to calculated harassment unrelated to prison needs, with the intent to humiliate and inflict psychological pain." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (quotation marks and citations omitted). "An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant." *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012). "[I]f the defendant had no intention of humiliating the plaintiff or deriving sexual pleasure from fondling his private parts, but was merely overzealous in conducting the pat down . . . , there was no deliberate violation of a constitutional right and so no basis for the suit." *Id.* at 643.

Dorsey's filings are self-defeating because they demonstrate the existence of a material dispute without regard to what the defendants have to say about it. On the one hand, Dorsey says Crowe squeezed his butt during the search. But Dorsey also reports that at the time of the search, Crowe claimed it was done properly. The disciplinary and conduct reports also state that it was a proper search. On Dorsey's motion for summary

10

judgment, I must draw all inferences in favor of defendants. Summary judgment is not warranted in favor of Dorsey because there is a dispute about whether the search was done properly or not.

Next, I'll turn to the retaliation claim. To ultimately prevail at trial, a plaintiff "must demonstrate that, but for his protected speech, the employer would not have taken the adverse action." *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). However, he may establish a prima facie case of retaliation at summary judgment with evidence that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citation omitted). "Then, the burden shifts to the employer to rebut the causal inference raised by the plaintiff's evidence. If the employer fails to counter the plaintiff's evidence, then the employer's retaliatory actions are considered a necessary condition of the plaintiff's harm, and the plaintiff has established the but-for causation needed to succeed on his claim." *Kidwell*, 679 F.3d at 965 (quotation marks and citation omitted).

I'll assume that Dorsey has made out a prima facie case of retaliation and that Williams was motivated in part by Dorsey's grievances. However, the record shows that the stated reason for firing him was his attitude when he was sent back to his unit. At trial, Dorsey may be able to prove that Williams made up that reason to justify firing him for the grievances. But for now, I must accept Williams' side. Dorsey has not

established beyond dispute that he would still be employed if he hadn't filed a grievance.

Finally, as defendants note, Dorsey is no longer at Miami Correctional Facility, where Hyatt is the Warden. ECF 36. There is no indication that Dorsey will return to Miami, and therefore the injunctive relief claim is moot. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred." (quotation marks and citation omitted)).

For these reasons, the court:

(1) DENIES plaintiff's motion for summary judgment (ECF 51);

(2) DENIES plaintiff's motion for a summary judgment hearing (ECF 64);

(3) GRANTS defendants' motion for partial summary judgment (ECF 60);

(4) DISMISSES the Equal Protection claim against Brad Williams, Sandy Roark, Michael Arthur, and William Hyatte with prejudice; and

(5) DISMISSES the injunctive relief claim against William Hyatte.

ENTERED: March 8, 2021.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT